SEALED

FILED

UNITED STATES DISTRICT COURT 2023 APR 13  AM 10: 02
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

US DISTRICT COURT
MIDDLE DISTRICT OF FL
ORLANDO FLORIDA

UNITED STATES OF AMERICA

v.

JOHN CAN UNSALAN
   a/k/a Hurrem Can Unsalan

CASE NO. 6:23-cr-70 - WWB-EJK

50 U.S.C. § 1705(a) & (c)
18 U.S.C. § 1956(a)(2)(A) & (h)

## INDICTMENT

The Grand Jury charges:

## GENERAL ALLEGATIONS

At all times material to this Indictment, unless otherwise specified:

## INTRODUCTION

1.    From at least in or about July 2018, and continuing until at least in or about October 2021, the defendant,

**JOHN CAN UNSALAN,**
**a/k/a Hurrem Can Unsalan,**

and others orchestrated and carried out a plan to violate and evade and attempt to violate and evade U.S. sanctions against Sergey Vitalievich Kurchenko ("Sergey Kurchenko" or "Kurchenko"), Kompaniya Gaz-Alyans, OOO ("Gaz-Alyans"), and ZAO Vneshtorgservis ("Vneshtorgservis") by transmitting funds to, and receiving goods, services, and funds from, entities the defendant knew were owned and controlled by Kurchenko. In furtherance of the scheme, and to promote the violation

of U.S. sanctions against Kurchenko, **UNSALAN** transported, transmitted, and transferred monetary instruments and funds from within the United States to entities and accounts located outside the United States, and from entities and accounts outside the United States to the United States.

## RELEVANT INDIVIDUALS AND ENTITIES

2.      Sergey Kurchenko is a citizen of Ukraine believed to be residing in the Russian Federation. On July 30, 2015, the U.S. Department of the Treasury Office of Foreign Assets Control ("OFAC") designated Kurchenko as a Specially Designated National ("SDN") and blocked his property and interests in property. Kurchenko was designated because he was responsible for or complicit in, or engaged in, directly or indirectly, misappropriation of state assets of Ukraine or of an economically significant entity in Ukraine.

3.      ZAO Vneshtorgservis is a company based in the unrecognized territory of South Ossetia in the Republic of Georgia. In the spring of 2017, the so-called Donetsk People's Republic and so-called Luhansk People's Republic—in the separatist-controlled Donetsk and Luhansk regions of eastern Ukraine—put certain Ukrainian enterprises, including coal mines, under the control of Vneshtorgservis. Vneshtorgservis worked with Kompaniya Gaz-Alyans, OOO, a Russian company controlled by Sergey Kurchenko, to export coal from the separatist-controlled Donetsk and Luhansk regions of Ukraine to Europe. On January 26, 2018, OFAC designated Vneshtorgservis and Gaz-Alyans as SDNs and blocked their property and interests in property for, respectively: (a) having acted or purported to act for or on behalf of,

directly or indirectly, the so-called Donetsk People's Republic and the so-called Luhansk People's Republic, and (b) having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, Vneshtorgservis, the so-called Donetsk Peoples Republic, and the so-called Luhansk People's Republic.

4.      Metalhouse, LLC ("Metalhouse") is a limited liability company based in Orlando, Florida, that is registered with the State of Florida. According to its public website, Metalhouse operates in the steel industry by trading and distributing raw steel-making materials globally and offering a range of related services, including shipping, inspection, breaking bulk at port, clearing goods through customs, deliveries to clients, various forms of credit, and the use of derivatives for price risk management.

5.      Defendant **JOHN CAN UNSALAN, a/k/a Hurrem Can Unsalan ("UNSALAN")** is a United States citizen currently residing in the Middle District of Florida. **UNSALAN** is the President, Managing Member, and Director of Metalhouse and has repeatedly identified himself as its 100% owner.

6.      Company A is a company incorporated in Hong Kong that maintained a bank account in Saint Petersburg, Russia, which **UNSALAN** knew was controlled by Kurchenko.

7.      Company B is a company incorporated in Cyprus which **UNSALAN** knew was controlled by Kurchenko.

3

## RELEVANT LAW AND REGULATIONS
### *IEEPA and the Ukraine-/Russia-Related Sanctions Regulations*

8.     The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1708, provides the President of the United States authority "to deal with any unusual and extraordinary threat, which has its source in whole or in substantial part outside the United States, to the national security, foreign policy, or economy of the United States." 50 U.S.C. § 1701(a). Pursuant to that authority, the President may declare a national emergency through Executive Orders that have the full force and effect of law. Among other things, IEEPA empowers the President to "investigate, block . . . regulate, . . . prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States." IEEPA further empowers the President to "issue such regulations . . . as may be necessary for the exercise of the authorities granted" by IEPPA.

9.     IEEPA further provides that it is a crime to willfully violate, attempt to violate, conspire to violate, or cause a violation of any order, license, regulation, or prohibition issued pursuant to IEEPA. 50 U.S.C. § 1705(a).

10.     In March 2014, pursuant to IEEPA, the President issued Executive Orders 13660, 13661, and 13662 authorizing the Secretary of the Treasury, in

consultation with the Secretary of State, to block all property and interests in property of persons involved in the Russian Federation military invasion of the Crimea region of Ukraine, including persons operating in the defense and related materiel sector of the Russian Federation.

11.     Pursuant to these Executive Orders, the Secretary of the Treasury promulgated the Ukraine-/Russia-Related Sanctions Regulations (Title 31, Code of Federal Regulations, Part 589), which generally prohibit any U.S. person from conducting business with persons or entities designated by the Secretary of the Treasury, acting through OFAC, as an SDN. Specifically, Ukraine-/Russia-Related Sanctions Regulations state that:

> The prohibitions . . . of this section include prohibitions on the following transactions: (1) The making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to paragraph (a) of this section; and (2) The receipt of any contribution or provision of funds, goods, or services from any person whose property and interests in property are blocked pursuant to paragraph (a) of this section.

31 C.F.R. § 589.201(b). The regulations specify that "the term *person* means an individual or entity." *Id.* § 589.329 (emphasis in original).

12.     The Ukraine-/Russia-Related Sanctions Regulations further provide that "[a]ll transactions prohibited pursuant to [Executive Order 13660 of March 6, 2014, Executive Order 13661 of March 16, 2014, and Executive Order 13662 of March 20, 2014 (the 'Ukraine-Related Executive Orders')], are prohibited pursuant to this part." 31 C.F.R. § 589.201(e).

13.     Further, according to Section 5(a) of Executive Orders 13660, 13661, and 13662, "[a]ny transaction that evades or avoids, has the purpose of evading or avoiding, causes a violation of, or attempts to violate any of the prohibitions set forth in this order is prohibited." Finally, Section 5(b) of these Executive Orders makes unlawful any conspiracy to violate the prohibitions set forth in the orders.

14.     On July 30, 2015, pursuant to Executive Order 13660, OFAC designated Sergey Vitalievich Kurchenko as an SDN and blocked his property and interests in property. Specifically, OFAC designated the following names and aliases: "KURCHENKO, Sergey Vitalievich (a.k.a. KURCHENKO, Serhiy; a.k.a. KURCHENKO, Serhiy Vitaliyovych)." On January 26, 2018, pursuant to this same executive Order, OFAC designated ZAO Vneshtorgservis and Kompaniya Gaz-Alyans, OOO as SDNs and blocked their property and interests of property. Kompaniya Gaz-Alyans, OOO is also known as "Company Gaz-Alliance LLC" and "Obshchestvo S Ogranichennoi Otvetstvennostyu Kompaniya Gaz-Alyans." As of these respective dates, in the absence of authorization or a license from OFAC, U.S. persons are prohibited from contributing funds or providing goods or services to Kurchenko, Vneshtorgservis, and Gaz-Alyans or for their benefit or attempting to do so. Similarly, absent such a license, U.S. persons are prohibited from receiving any contribution or provision of funds, goods, or services from them or attempting to do so. 31 CFR § 589.201. Collectively, IEEPA, the Ukraine-/Russia-Related Sanctions Regulations, and the Ukraine-Related Executive Orders are referred to in this Indictment as the "U.S. Sanctions."

15.     No entity or individual appearing in this Indictment obtained the necessary authorization or license from OFAC to provide or contribute funds, goods, or services to or for the benefit of SDNs Kurchenko or Gaz-Alyans; to receive or contribute funds, goods, or services from SDNs Kurchenko or Gaz-Alyans; or to conduct or facilitate any transaction that evades, avoids, has the purpose of evading or avoiding, or causes a violation of sanctions against SDNs Kurchenko or Gaz-Alyans.

## THE SANCTIONS VIOLATIONS AND MONEY LAUNDERING SCHEME

16.     From at least in or about July 2018 and continuing until at least in or about October 2021, the defendant,

**JOHN CAN UNSALAN,**
**a/k/a Hurrem Can Unsalan,**

and others, conspired, orchestrated, and carried out a scheme: (a) to violate IEEPA by willfully conducting monetary transactions with and for the benefit of Sergey Kurchenko, an oligarch located in Russia who was sanctioned by OFAC, and Gaz-Alyans, a Kurchenko-controlled entity that was also sanctioned by OFAC; and (b) to commit international money laundering by transferring funds into and out of the United States to promote IEEPA violations. During the relevant period, **UNSALAN**, acting through Metalhouse, engaged in transactions involving the purchase, sale and shipping of goods valued at over $150 million with entities **UNSALAN** knew were beneficially owned and controlled by SDNs Sergey Kurchenko and Gaz-Alyans at the time.

**UNSALAN knew that Metalhouse was transacting with sanctioned persons and entities**

17.     During the course of the scheme, **UNSALAN** knew that Kurchenko and Gaz-Alyans were subject to U.S. Sanctions. In addition, **UNSALAN** knew that Metalhouse was engaging in transactions with entities that were beneficially owned and controlled by Kurchenko and Gaz-Alyans. **UNSALAN** repeatedly acknowledged this in messages with business associates. For example, in or about August 2019, well after sanctions were imposed against Kurchenko on or about July 30, 2015, and Gaz-Alyans and Vneshtorgservis on or about January 26, 2018, **UNSALAN** emailed Metalhouse employees about Metalhouse's outstanding balances with, among others, Gaz-Alyans and Company A. In the e-mail, **UNSALAN** stated that the price of short billets, or semi-finished steel that is stored in rectangular bars, had been previously agreed upon with an officer appointed by Company A and that Kurchenko was now changing his mind about that price. He said that "[i]f Mr. Kurchenko is not agreeing on the price of short billets then he would have come to Istanbul himself and market the cargo himself to us." Likewise, in or about November 2019, **UNSALAN** sent a message to a business associate in which he stated that "We still do business with Kurchenko and we give chance to everyone." Similarly, in or about October 13, 2021, **UNSALAN** stated in an electronic communication to a business associate, in Turkish, that "[t]his time the last cargo from Kurchenko was loaded to you." Numerous other communications by **UNSALAN** reference his ongoing business relationship with Kurchenko.

18.     Similarly, **UNSALAN** knew that Gaz-Alyans, Company A, and Company B were beneficially owned and controlled by Kurchenko. For example, in a message sent to a business associate on or about July 30, 2020, **UNSALAN** stated that "[a]s far as I know [your company] work[s] with Gaz All [Gaz-Alyans]. We work too." **UNSALAN** then sought to purchase pig iron from the business associate, despite knowing that the source of the pig iron was Gaz-Alyans. Similarly, in an electronic communication he sent to a business associate on or about October 1, 2021, **UNSALAN** stated in Turkish that Company A, Company B, and Gaz-Alyans were "Kurchenko's companies."

**UNSALAN and Metalhouse engaged in over $43 million in transactions with Company B after the U.S. Sanctions were imposed**

19.     In or about June and July of 2019, Metalhouse entered into two contracts to buy metal products from Company B. Pursuant to these contracts (the "Company B Contracts"), between in or about July 2019 and in or about September 2019, Metalhouse paid Company B $10.53 million, and Company B delivered to Metalhouse clients, with Metalhouse serving as the intermediary, three shipments totaling 19,950 tons of steel billets at a contracted price of $385 per ton, for a total value of $7.68 million. In or about September 2019, Metalhouse and Company B entered into an addendum to the Company B Contracts, signed by **UNSALAN** in his capacity as Director of Metalhouse, confirming that, as of September 12, 2019, Company B owed Metalhouse a balance of $2.84 million under the contracts.

20.    Between in or about September 2019 and in or about April 2020, **UNSALAN**, acting through Metalhouse, and Company B entered into at least nineteen purchase orders through which Metalhouse agreed to purchase an additional $49 million in metal products from Company B, including steel billets, pig iron, and wire rods. Pursuant to these purchase orders, between on or about September 19, 2019, and in or about June 2020, Metalhouse wired over $33.5 million from the United States to Company B. Company B, in turn, shipped a large number of metal products to Metalhouse or Metalhouse clients.

21.    **UNSALAN** made these payments and received these goods from Company B despite knowing that Company B was beneficially owned and controlled by SDN Sergey Kurchenko. In a series of electronic communications sent between in or about September 2020 and in or about July 2021, **UNSALAN** and an individual who he understood served as an intermediary for Kurchenko (the "Kurchenko Intermediary") repeatedly referred to Kurchenko both by name and as "Mr. K." In a message on or about April 6, 2021, **UNSALAN** stated that there were rumors "[t]hat Mr K [*i.e.*, Kurchenko] lost everything" and that "[w]e propose him to pay 1.9 million usd on behalf of [Company B] on April 19 as he promised . . . . Please let me know about payment for [Company B] . . . [a]s he promised." The Kurchenko Intermediary responded, "Ok, will ask Mr. K also about it." Similarly, on or about April 24, 2021, **UNSALAN** messaged the Kurchenko Intermediary to explain that "I'm expecting money [from Kurchenko], we paid you money, you got money and you didn't deliver

products[.] [T]here are two solutions: 1) You pay money back 2) you load cargoes. Now you are delayed and we don't believe you can produce steel anymore, so we want option 1," *i.e.*, payment of the $1.9 million. Likewise, on or about July 23, 2021, Unsalan messaged the Kurchenko Intermediary to ask, "Can you please arrange a meeting with Mr Kurchenko on first week of September[?]" The Kurchenko Intermediary responded, "Will ask mr. K and let you know immediately."

**UNSALAN and Metalhouse engaged in over $18 million in transactions with Company A after the U.S. Sanctions were imposed**

22.      Between in or about April 2020 and in or about March 2021, Metalhouse entered into at least 23 purchase orders with Company A, signed by **UNSALAN**, in which Metalhouse agreed to purchase a total of over $35 million in metal products from Company A, including pig iron, square billets, and wire rods.  Pursuant to these purchase orders, between in or about August 2020 and in or about March 2021, Metalhouse wired Company A over $18 million.

23.      By in or about February 2021, Company A's outstanding balance with Metalhouse, *i.e.* Metalhouse's total payments to Company A minus the value of goods shipped by Company A, had reached $26 million. On or about February 27, 2021, **UNSALAN** messaged a Russian national business associate, stating "I need your help because I have receivable from kurchrnko [sic] 26m$ and can't get anything do you know any one Strong in government to push him." Less than two weeks later, on or about March 11, 2021, Metalhouse forwarded Company A personnel a table that showed Company A owing Metalhouse a balance of over $26 million. This total

consisted of a carryover balance of $20.5 million as of September 30, 2020, plus an additional net balance of $5.6 million for the period from October 2020 through March 2021. The $5.6 million figure represented the difference between: (a) approximately $17.8 million in payments sent from Metalhouse to Company A between October 2020 and March 2021, and (b) approximately $12.2 million in shipments from Company A to Metalhouse during that same period.

24.     In a "Final notice" that was sent to Company A on or about March 15, 2021, **UNSALAN** stated that "I'm writing this letter to remind you of the unfulfilled contracts until to date and your past due balance" of $26.4 million. In his letter, **UNSALAN** identified seven past due shipments, corresponding to seven purchase orders that Metalhouse had executed with Company A between in or about August 2020 and in or about December 2020, through which Metalhouse agreed to purchase over $13.79 million in pig iron, square billets, and wire rods.

25.     **UNSALAN** engaged in these transactions with Company A despite knowing that the ultimate beneficiaries of these transactions were SDNs Sergey Kurchenko and Gaz-Alyans.

26.     For example, in a series of messages dated on or about October 23, 2020, **UNSALAN** told a business associate that he believed Kurchenko, through Company A, had sold products to Metalhouse that **UNSALAN** had already paid for but Kurchenko had failed to deliver, and that Kurchenko was attempting to resell the products to other buyers through Gaz-Alyans. Specifically, **UNSALAN** stated "[w]e

12

book cargo from Kurchenko and I have info cargo of pig iron which I paid for is being offered to you." These messages included copies of commercial invoices that **UNSALAN** forwarded to the business associate, which corresponded to $1.179 million in wire transfers that Metalhouse sent to Company A between on or about October 21, 2020, and on or about October 30, 2020. **UNSALAN** told his business associate that "[t]his is my cargo . . . He [Kurchenko] is offering my cargo to your company now[.] I kindly ask you to refuse purchase of this cargo from Gaz Aliiance as we paid for it several times." **UNSALAN** also stated that "Kurchenko is offering our cargo" to another individual.

27.     Similarly, on or about March 17, 2021, **UNSALAN** expressed frustration to the Kurchenko Intermediary that Kurchenko had not yet shipped metal products that Metalhouse had purchased from Kurchenko:

> When will you ship my 7000 tons of billets + 5000 tons Wire rods I paid in December . . . It is March. Now you are stealing my funds . . . you seem to be a nice person why don't you understand what Mr Kurchenko [is] doing is wrong . . . If you understand why do you still assist him. Why are you being part of this crime gang . . . Prove me I'm wrong and you can give my cargo.

This inquiry corresponded to two December 2020 purchase orders in which Metalhouse had agreed to purchase 7,000 tons of steel billets for $3.535 million and 5,000 tons of wire rods for $2.75 million from Company A. In response, the Kurchenko Intermediary stated: "Will translate and forward all this to mr. K. You know well and saw it many times on your meetings with him and on your calls that only he makes all decisions."

13

## COUNT ONE
### Conspiracy to Violate IEEPA and
### the Ukraine/Russia-Related Sanctions Regulations
### (50 U.S.C. § 1705(a) and (c) and 31 C.F.R. § 589.201)

28.    Paragraphs 1 through 27 of this Indictment are restated and realleged as if fully set forth herein.

29.    Beginning in or about June 2019, and continuing through in or about October 2021, in the Middle District of Florida, and elsewhere, the defendant,

**JOHN CAN UNSALAN,**
**a/k/a Hurrem Can Unsalan,**

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the Grand Jury to violate IEEPA, contrary to 50 U.S.C. § 1705(a) and (c), Executive Orders 13660, 13661, and 13662, and 31 C.F.R. § 589.201.

30.    It was a part and an object of the conspiracy that the defendant, together with others, would willfully and knowingly violate IEEPA and the regulations promulgated thereunder, to wit, by willfully causing and attempting to cause on numerous occasions: (1) U.S. persons to provide funds, goods, and services to and for the benefit of SDNs Sergey Kurchenko and Gaz-Alyans; (2) U.S. persons to receive funds, goods, and services from SDNs Sergey Kurchenko and Gaz-Alyans; and (3) U.S. persons to willfully engage in transactions and facilitate transactions for the purpose of evading and avoiding the requirements of U.S. law with respect to the provision and receipt of funds, goods, and services, to, from, and for the benefit of

SDNs Sergey Kurchenko and Gaz-Alyans, without having first obtained the required authorization from OFAC.

All in violation of 50 U.S.C. § 1705(a) and (c), Executive Orders 13660, 13661, and 13662, and 31 C.F.R. § 589.201.

## COUNTS TWO THROUGH ELEVEN
### Substantive Violations of IEEPA and the Ukraine/Russia-Related Sanctions Regulations (50 U.S.C. § 1705(a) and (c) and 31 C.F.R. § 589.201)

31.     Paragraphs 1 through 30 of this Indictment are restated and realleged as if fully set forth herein.

32.     On or about the dates listed below, in the Middle District of Florida, and elsewhere, the defendant,

### JOHN CAN UNSALAN,
### a/k/a Hurrem Can Unsalan,

did knowingly and willfully provide and attempt to make a contribution and provision of funds, goods, and services by, to, and for the benefit of SDNs Sergey Kurchenko and Gaz-Alyans through the below-named intermediaries, without having first obtained the required authorization from OFAC, as specified below.

| COUNT | APPROXIMATE DATE | AMOUNT | INTERMEDIARY |
|-------|------------------|--------|--------------|
| 2 | September 19, 2019 | $928,003.33 | Company B |
| 3 | October 30, 2019 | $1,331,375.80 | Company B |
| 4 | November 7, 2019 | $1,472,671.00 | Company B |
| 5 | December 6, 2019 | $1,917,213.53 | Company B |

| 6 | January 28, 2020 | $1,761,949.99 | Company B |
| 7 | November 27, 2020 | $1,065,407.95 | Company A |
| 8 | December 4, 2020 | $2,145,281.26 | Company A |
| 9 | February 24, 2021 | $887,414.11 | Company A |
| 10 | March 8, 2021 | $828,538.45 | Company A |
| 11 | March 11, 2021 | $982,643.61 | Company A |

All in violation of 50 U.S.C. § 1705(a) and (c), Executive Orders 13660, 13661, and 13662, and 31 C.F.R. § 589.201.

## COUNT TWELVE
**Conspiracy to Commit Money Laundering**
**(18 U.S.C. § 1956(h))**

33.     Paragraphs 1 through 32 of this Indictment are restated and realleged as if fully set forth herein.

34.     Beginning in or about June 2019, and continuing through in or about October 2021, in the Middle District of Florida, and elsewhere, the defendant,

**JOHN CAN UNSALAN,**
**a/k/a Hurrem Can Unsalan,**

did knowingly and voluntarily combine, conspire, confederate, and agree with other persons known and unknown to the Grand Jury to commit offenses in violation of 18 U.S.C. § 1956, that is, to knowingly transport, transmit, and transfer, and to attempt to transport, transmit, and transfer, monetary instruments and funds from a place in the United States to and through a place outside the United States and to a place in

16

the United States from and through a place outside the United States with the intent to promote the carrying on of a specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(2)(A). It is further alleged that the specified unlawful activity is a violation of the International Emergency Economic Powers Act, in violation of 50 U.S.C. § 1705(a) and (c).

All in violation of 18 U.S.C. § 1956(h).

## COUNTS THIRTEEN THROUGH TWENTY-TWO
### International Money Laundering
### (18 U.S.C. § 1956(a)(2)(A))

35.     Paragraphs 1 through 34 of this Indictment are restated and realleged as if fully set forth herein.

36.     On or about the dates listed below, in the Middle District of Florida, and elsewhere, the defendant,

**JOHN CAN UNSALAN,**
**a/k/a Hurrem Can Unsalan,**

as specified below, did knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of a specified unlawful activity, to wit, violations of the International Emergency Economic Powers Act, as specified below.

| COUNT | APPROXIMATE DATE | MONETARY INSTRUMENT | SENT FROM | SENT TO |
|---|---|---|---|---|
| 13 | September 19, 2019 | $928,003.33 | Orlando, Florida | Cyprus |
| 14 | October 30, 2019 | $1,331,375.80 | Orlando, Florida | Cyprus |
| 15 | November 7, 2019 | $1,472,671.00 | Orlando, Florida | Cyprus |
| 16 | December 6, 2019 | $1,917,213.53 | Orlando, Florida | Cyprus |
| 17 | January 28, 2020 | $1,761,949.99 | Orlando, Florida | Cyprus |
| 18 | November 27, 2020 | $1,065,407.95 | Orlando, Florida | Russia |
| 19 | December 4, 2020 | $2,145,281.26 | Orlando, Florida | Russia |
| 20 | February 24, 2021 | $887,414.11 | Orlando, Florida | Russia |
| 21 | March 8, 2021 | $828,538.45 | Orlando, Florida | Russia |
| 22 | March 11, 2021 | $982,643.61 | Orlando, Florida | Russia |

All in violation of 18 U.S.C. §§ 1956(a)(2)(A) and 2.

## FORFEITURE

1.    The allegations contained in Counts One through Twenty-Two are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), and 28 U.S.C. § 2461(c).

2.    Upon conviction of a violation of 50 U.S.C. § 1705, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3.    Upon conviction of a violation of 18 U.S.C. § 1956, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

4.    If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the

provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28

U.S.C. § 2461(c).



A TRUE BILL,

Foreperson

ROGER B. HANDBERG
United States Attorney

By: _____
Chauncey A. Bratt
Assistant United States Attorney

By: _____
Sara C. Sweeney
First Assistant United States Attorney

BRENT S. WIBLE
Chief, Money Laundering and Asset Recovery Section
Criminal Division
United States Department of Justice

By: _____
Sean O'Dowd, Trial Attorney

JAY I. BRATT
Chief, Counterintelligence and Export Control Section
National Security Division
United States Department of Justice

By: _____
Emma Ellenrieder, Trial Attorney

20

# UNITED STATES DISTRICT COURT
Middle District of Florida
Orlando Division

## THE UNITED STATES OF AMERICA

vs.

### JOHN CAN UNSALAN
a/k/a Hurrem Can Unsalan

## INDICTMENT

Violation:  50 U.S.C. § 1705(a)
18 U.S.C. § 1956(h)



Filed in open court this 12th day

of April, 2023.

_____
Clerk

Bail   $_____